IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Christopher Rinehart<br>5980 River Rd.<br>Waverly, Ohio 45690 | : <br> : <br> : <br> : | Case No. |
|         Plaintiff, | : <br> : | |
| v. | : <br> : | |
| Industrial Maintenance Services, Inc.<br>dba IMS Contracting, Inc.<br>1920 20th Ave. North<br>Wells, Michigan 49829 | : <br> : <br> : <br> : <br> : | **COMPLAINT WITH JURY<br>DEMAND HEREIN** |
|         Defendant. | : | |

**Jurisdiction and Venue**

1. This is an action for damages arising out of Defendant's violations of the Family Medical Leave Act (FMLA), 29 U.S.C. §2611 *et seq*. and worker's compensation retaliation in violation of O.R.C. §4123.90.

2. This court has subject-matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §1331 and supplemental jurisdiction over Plaintiffs' State law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this court because Defendant conducts business in this District and Plaintiff was employed by Defendant in Ross County, Ohio.

**Parties**

4. Plaintiff Christopher Rinehart is an individual residing in Waverly, Ohio.

5. Plaintiff was formerly employed by Defendant Industrial Maintenance Services, Inc. dba IMS Contracting, Inc.

6. Defendant Industrial Maintenance Services, Inc. is a foreign corporation licensed and doing business in the State of Ohio as IMS Contracting, Inc.

**Factual Allegations**

7. Defendant is the general contractor in charge of the building project located at the Veteran's Hospital facility in Chillicothe, Ross County, Ohio.

8. Rinehart was employed by Defendant as a Carpenter from February 12, 2019 until June 10, 2020.

9. He reported to Superintendent Keith (last name unknown) and to V.P. Tim Martineau.

10. Throughout his tenure with Defendant, Rinehart was well-regarded by his superiors and was never the subject of any discipline nor negative reviews of his performance.

11. On Thursday, April 16, 2020, Rinehart injured his back at work when he lifted a trashcan full of concrete.

12. He reported his injury to his Superintendent Keith.

13. On the following Monday, Rinehart was treated at Adena Occupational Health and placed on light duty restrictions.

14. Rinehart sent his physical restrictions to Martineau via text message.

15. After some consideration, Martineau informed him that he should remain at home until he was 100% recovered. He told Plaintiff that he was a "liability to the company" and he didn't want him to return to the job site.

16. Thereafter, there was ongoing communication between Rinehart and Martineau regarding his ability to return to work.

17. Rinehart applied for and was awarded temporary total compensation from the Ohio Bureau of Workers' Compensation.

18. Defendant opposed his application for disability benefits.

19. Martineau represented Defendant at the Industrial Commission hearings.

20. During one such hearing, he informed the Hearing Officer that he was anxious to have Rinehart return to work.

21. Rinehart was encouraged by Martineau's statements and asked his doctor to release him so he could get back to work.

22. On June 10, 2020 he was released to return to work on full duty.

23. He notified Martineau of his release and sent the paperwork confirming his status.

24. He asked if Martineau would inform his Superintendent of his return to work.

25. When he heard nothing, Rinehart called Superintendent Keith, who said he was glad he was feeling better, that they needed him, and that he was glad he would be returning.

26. When Rinehart could not get an answer about when he should return to work, he called his friend Paul Zickafoose, who is a union pipefitter on the VA job.

27. Zickafoose told him that two other people had already been hired to fill the Carpenter roles at the VA and that the company would not be returning him to work at that site.

28. Rinehart called his Superintendent to ask if he still had a job with IMS.

29. He was directed to call Martineau.

30. On June 12, 2020 Rinehart spoke to Martineau about returning to work.

31. Martineau informed him that the Company did not need three Carpenters on the VA job in Chillicothe.

32. Rinehart asked about available positions on other jobs, but Martineau indicated that nothing was available.

33. Rinehart searched Indeed and found available positions in Dayton, Cleveland, and Chillicothe.

### COUNT I
### VIOLATIONS OF THE
### FAMILY MEDICAL LEAVE ACT

34. Plaintiff restates and incorporates the allegations in the foregoing paragraphs as if fully rewritten herein.

35. Plaintiff was an "eligible employee" as that term is defined by the Family Medical Leave Act.

36. Plaintiff was employed by Defendant for more than twelve months and worked more than 1250 hours before his need for leave began.

37. Defendant is an "employer" as that term is defined by the FMLA and a "joint employer" for purposes of determining employee eligibility for leave.

38. Defendant is the general contractor on the VA building project in Chillicothe, Ohio and the "primary" employer of four IMS employees.

39. Defendant has employed numerous sub-contractors on the worksite including, but not limited to:

    a. Eagle Mechanical with at least 10 employees on site;

    b. S.O.S. Electric, Inc. with at least 8 employees on site;

    c. OCP Contractors with at least 10 employees on site;

    d. Smoot Construction with at least 12 employees on site;

    e. Allman Brothers Masonry with at least 10 employees on site.

40. Defendant was/is the joint employer of each employee of all the sub-contractors working on the VA project.

41. As such, Defendant employed (and/or jointly employed) at least 50 employees at the VA project in the twelve months preceding Plaintiff's need for leave.

42. Defendant's relationship to sub-contractors on the VA project was/is contractual.

   a. Defendant had the right to discipline sub-contractor employees.

   b. Defendant had the right to order sub-contractor employees off the worksite for violating Defendant's rules.

   c. Defendant established the work schedule for sub-contractors and their employees.

   d. Sub-contractor employees are/were required to sign-in and sign-out with Defendant's Superintendent and are not permitted to leave the jobsite without Defendant's permission.

   e. Sub-contractors and their employees are required to follow safety rules established by Defendant.

43. Plaintiff was entitled to job-protected leave under the FMLA.

44. Plaintiff's need for leave began on or about April 20, 2020 and continued until he was released to return to work on June 10, 2020.

45. Plaintiff notified Defendant of his need for leave.

46. Defendant violated the FMLA by failing to inform Plaintiff of his rights and responsibilities under the FMLA.

47. Defendant violated the FMLA by failing to designate Plaintiff's leave as FMLA qualifying.

48. Defendant violated the FMLA by refusing to reinstate Plaintiff upon his release to return to work and by terminating his employment.

49. Plaintiff has been damaged by Defendant's violations of the FMLA such that he is entitled to damages therefore, including liquidated damages and attorney's fees.

### COUNT II
### WORKER'S COMPENSATION RETALIATION
### IN VIOLATION OF ORC §4123.90

50. Plaintiff restates and incorporates the allegations in the foregoing paragraphs as if fully rewritten herein.

51. When Plaintiff pursued his right to file a worker's compensation claim and apply for disability benefits, he was engaged in protected activity.

52. Defendant was aware of Plaintiff's protected activity.

53. By terminating Plaintiff's employment as described above, Defendant retaliated against Plaintiff in violation of O.R.C. § 4123.90.

54. Plaintiff has been damaged by Defendant's retaliatory termination of his employment.

55. Plaintiff has complied with the jurisdictional prerequisites to this action by providing the Defendant with a notice of intent to pursue his rights under RC §4123.90.

56. Plaintiff has filed this action within 180 days of the adverse employment action.

**WHEREFORE,** Plaintiff respectfully prays that this Court grant him:

    a. lost past and future wages and benefits in an amount in excess of $75,000;

    b. liquidated damages;

    c. attorney fees and costs;

    d. prejudgment and post judgment interest;

    e. such other equitable and further relief as may be just and appropriate.

Respectfully Submitted,

*/s/Sharon Cason-Adams*
Sharon Cason-Adams (0067550)
AGEE CLYMER
140 East Town Street, Suite 1100
Columbus, Ohio 43215
Telephone: 614-221-3318
Fax No.: 614-221-7308
Attorney for Plaintiff

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues triable before a jury.

*/s/Sharon Cason-Adams*
Sharon Cason-Adams (0067550)